**ESTATE OF Lester B. WELLER, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A.H–97–3011.**

United States District Court, S.D. Texas, Houston Division.

Dec. 22, 1998.

Dean A. Hrbacek, Sugar Land, TX, for Plaintiff.

Gregg D. Stevens, Dept of Justice, Dallas, TX, for Defendant.

## MEMORANDUM OPINION

JOHNSON, United States Magistrate Judge.

Pending before the court[1] are the following: (1) United States of America's Motion for Summary Judgment (Docket Entry # 16); (2) Plaintiff Estate of Lester B. Weller's Cross Motion for Summary Judgment (Docket Entry # 20); and (3) the responses filed thereto. For the reasons discussed below, Plaintiff Estate of Lester Weller's Cross Motion for Summary Judgment is GRANTED, and the United States

---

**1.** The parties have consented to entry of final judgment pursuant to 28 U.S.C. § 636(c). *See*    Docket Entry # 23.

of America's Motion for Summary Judgment is DENIED.

## I.

### Case Background

This is a tax refund suit brought pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1). It appears that the following facts are undisputed. Plaintiff's decedent, Lester Weller, was an investor in a limited partnership, Western Minerals & Technology II (Western Minerals). Weller[2] took tax deductions on his 1982, 1983, and 1985 joint income tax returns, based on his distributive share of the Western Minerals losses in those years.[3] The Western Minerals & Technology II partnership returns were later chosen for audit. The audit disallowed a portion of the partnership's losses in those three years based on the basis limitations found in 26 U.S.C. § 704(d). On March 25, 1991, the IRS sent the Tax Matters Partner the notice of Final Partnership Administrative Adjustments based on the audit results. No partner appealed the readjustment of the partnership items and those determinations became final and binding on all partners.

The parties agree that the IRS had until August 21, 1992 to make penalty assessments on Weller's individual income tax returns based on the disallowed partnership items.[4] On August 20, 1992, one day before limitations ran, the IRS sent deficiency notices in the form of "90 day letters"[5] to Weller, for tax years 1982 through 1990.

Each deficiency notice assessed a negligence penalty pursuant to 26 U.S.C. § 6653(a)(1) in the amount of 5% of the underpayment of tax, a negligence penalty of 50% of the interest due on the actual underpayment of tax pursuant to 26 U.S.C. § 6653(a)(2), and a 25% penalty pursuant to 26 U.S.C. § 6661 for a substantial underpayment of tax due. With the exception of the 1982 return, the IRS estimated an underpayment of income tax in the amount of $100,000 for years 1983 to 1990, and calculated the penalties based on that estimate. Those deficiency notices for 1983–1990 stated:

> We have been unable to determine the exact deficiency to which the proposed penalties for this adjustment apply.

> Since we are required to provide you with appeal rights for the proposed penalties, *we have based our penalty computations on an estimated deficiency of $100,000.* Once we have determined the correct tax deficiency, we will adjust the penalties to the correct amounts. (Emphasis added).

The IRS recalculated the assessments for 1982, 1983, and 1985 after limitations had run. The IRS abated the claimed tax deficiencies for 1984, 1986, 1987, 1988, 1989 and 1990, either because after looking at the returns, the partnership adjustments had no effect on those tax years, or because the taxpayer had not taken deductions for the partnership in those years.

### The 1982 Assessment

The August 20, 1992, assessment for 1982 reflected an additional tax liability of $51,267.00 upon which all penalties were predicated. This figure was based on the IRS's determination that the taxpayer's proportionate share of the disallowed partnership loss for 1982 was $99,378. The IRS simply added $99,378.00 to Weller's gross income, and assessed $51,267.00 for

---

**2.** The deductions were taken on joint tax returns. Mr. Weller was the only living taxpayer at the time of the 1992 assessments. He died on November 13, 1993. Since his estate is the Plaintiff in this action, the court will refer to the Plaintiff as "Weller."

**3.** A partnership files a federal income tax return but is not directly taxed. Instead, a partner reports his distributive share of income or loss on his individual income tax return.

**4.** *See* 26 U.S.C. § 6229(d).

**5.** Each letter notified the taxpayer of the proposed tax deficiency and advised him that he had 90 days to file an appeal with the Tax Court for a redetermination of the deficiency for that year.

the tax underpayment, plus statutory interest. The notice of deficiency also assessed an additional $70,743.20 in penalties based on a tax deficiency of $51,267.00. However, Weller had deducted from income only $50,000 attributable to Western Mineral's partnership losses in 1982, not the full $99,378.00. Weller complains that the IRS never checked his return prior to the August 20, 1992, assessment to ascertain the amount of the [now disallowed] loss deduction for the partnership. The IRS admits that it did not review Weller's 1982 return before issuing the notice of deficiency.

On February 8, 1993, the IRS sent a corrected report for tax year 1982 reflecting additional tax, interest and penalties owing only with respect to the disallowed $50,000. Instead of a tax deficiency of $51,267 on which all penalties were based, the recalculated tax deficiency was reduced by $24,690.00. The total of tax, penalties and interest due for tax year was $96,095.00. This was paid by check dated February 23, 1993, and received by the IRS on March 18, 1993.

On February 22, 1995, Plaintiff's decedent filed a Claim for Refund, Form 843, which requested that accrued interest and late payment penalties of $62,183 be refunded. The taxpayer also filed an amended tax return, Form 1040X, claiming a refund of $26,577 in income tax paid.

*The 1983 and 1985 Assessments*

On August 20, 1992, which, as noted above, was one day before the statute of limitations ran, the IRS issued notices of deficiency for tax years 1983 and 1985, basing the penalties on its estimate that

Weller's tax deficiency would be $100,000 for each year. In an affidavit attached to the United States' motion for summary judgment, the government concedes that it made "Protective Manual Assessments" in those years in order to protect the Government's interest because the statute of limitations was going to expire before the IRS had time to fully research and calculate the taxes owed. The affidavit failed to disclose any basis for the $100,000 "estimate" of the tax deficiency. The total amount assessed for 1983 was $400.124.65 [6]

For tax year 1983, the IRS sent an adjustment report on January 29, 1993, which lowered the income tax deficiency from the estimated $100,000 to $18,983. This brought the total due for tax, penalties and interest to $37,325.20.[7] Weller paid the taxes and timely filed a Form 843 seeking refund of $16,443 for late interest and penalties. Weller also filed a Form 1040X seeking refund of $18,983 in income taxes paid.

For tax year 1985, the adjustment report was sent to the taxpayer on February 4, 1993. The tax deficiency was lowered from the prior "estimate" of $100,000 to $17,556.00. This brought the total tax, penalties and interest down from the prior "estimate" of $305,067.70 [8] to $32,920.12.[9] Weller paid the taxes and timely filed a Form 843 seeking refund of late interest and penalties in the amount of $15,364.12. Weller also filed a Form 1040X seeking refund of $17,556 of income tax paid.

In years 1982, 1983, and 1985, the adjustments reports which correctly calculated the tax deficiencies were completed outside the limitations period.

6. This was based on penalties of $120,041.55, a tax deficiency of $100,000, and accrued interest of $180,083.10 [figured backwards from the § 6653(a)(2) penalty].

7. This total represents $18,983 in additional taxes, $16,443.90 in interest and late payment penalties and a penalty of $1,898.30 for making a substantial underpayment of tax. The taxpayer is not claiming a refund on the substantial underpayment of tax penalty.

8. This was based on penalties of $88,355.90, a tax deficiency of $100,000, and accrued interest of $116,711.80 [figured backwards from the 6653(a)(2) penalty].

9. This total represents $17,556 in additional income taxes, accrued interest and late payment penalties in the amount of $15,364.12, and a substantial underpayment penalty of $1,756. The taxpayer is not claiming a refund for the substantial underpayment penalty.

## II.

### *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED R. CIV. P. 56(c). Applicable substantive law determines what factual issues are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

While the party moving for summary judgment must show that there is not a genuine issue of material fact, they need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party does not meet its initial burden, the motion must be denied, irrespective of the nonmovant's response. *Id.* If, however, the moving party comes forward with evidence which would support summary judgment, the nonmovant must then make a showing of evidence which establishes that there is a genuine issue of material fact. *Id.*

Rule 56(c) sets forth the types of evidence which may be considered when reviewing a motion for summary judgment. This evidence includes pleadings, depositions, answers to interrogatories, admissions on file and affidavits.

Evidence used by the nonmoving party to avoid summary judgement need not be in a form which would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, Rule 56(e) does require that affidavits opposing summary judgment be based on personal knowledge and provide facts which would be admissible in evidence. Facts contained in affidavits which would not be admissible in evidence must be excluded from consideration for summary judgment purposes. Additionally, unsubstantiated beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994).

When considering the evidence submitted by both the movant and the nonmovant, the court must draw reasonable inferences from the underlying facts in favor of the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. All doubt as to the existence of a genuine issue of material fact must also be resolved in favor of the nonmovant. *Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 996–97 (5th Cir.1979).

## III.

### *Analysis*

A taxpayer may not bring suit for refund unless he has "duly filed [a claim for refund] ... according to the provisions of law in that regard." 26 U.S.C. § 7422(a). *See United States v. Felt & Tarrant Manufacturing Co.,* 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). To be timely, a claim for refund for the overpayment of the taxes must be filed by the taxpayer "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later..." 26 U.S.C. § 6511(a).

In the present claim for refund, Weller paid his 1982 tax deficiency on March 19, 1993. The claim for refund was filed on February 22, 1995. The claim for refund is timely. Weller paid the tax on the 1983 and 1985 deficiencies on August 23, 1993. Claims for refund of Weller's 1983 and 1985 tax deficiencies were filed on August 22, 1995. Those claims for refund are timely.

Section 6401(a) of the Internal Revenue Code states as follows:

(a) **Assessment and collection after limitation period.** The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.

In *Alexander v. United States,* 44 F.3d 328, 331 (5th Cir.1995), relying on Section 6401(a), the Fifth Circuit stated,

"Under the Code, payments made after the limitations period are defined as 'overpayments' and as such, must be refunded." *Accord Cohen v. United States,* 995 F.2d 205, 207 (Fed.Cir.1993)(the payment of a time-barred tax liability constituted an overpayment subject to mandatory refund). Therefore, if the payments made by the taxpayer were for a time-barred tax liability, the payments must be refunded.

The parties agree that the IRS had until August 21, 1992, to make tax assessments on Plaintiff's individual income tax returns and actually made those assessments on August 20, 1992. Thus, the assessments are timely unless the taxpayer can show that the August 20, 1992, assessments are void.

The taxpayer argues that the August 20th assessments are void because they are "naked" assessments, that is, made without any basis in fact. The IRS concedes that it did not look at the 1982 return before issuing the 1982 assessment and also admits that the 1983 and 1985 assessments were based on estimates of tax liability. The IRS claims that the August 20, 1992 assessments, while incorrect, were within limitations and necessary to protect the government's interests in the face of expiring limitations.

■■■ The general rule provides that the Commissioner's determination of a tax deficiency is presumptively correct. To rebut this presumption, the taxpayer bears the burden of proving by a preponderance of the evidence that the IRS's determination is arbitrary or erroneous. *United States v. Janis,* 428 U.S. at 433, 440–41, 96 S.Ct. 3021 (1976) (*citing Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935)) (when the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, a taxpayer will not be held liable for the tax). As stated in *Janis,* "[P]roof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous." *Janis,* 428 U.S. at 442, 96 S.Ct. 3021.

■■■ A deficiency notice made without any substantive evidence is considered to be a "naked" assessment and is not accorded the presumption of correctness. *Portillo v. Commissioner,* 932 F.2d 1128, 1133 (5th Cir.1991)(Commissioner must provide evidence to link taxpayer to tax-generating activity before presumption of correctness applies). A "naked" assessment is, by definition, arbitrary and excessive because it is not based on substantive evidence.

In *Scar v. Commissioner,* 814 F.2d 1363 (9th Cir.1987), the court invalidated a notice of deficiency based on a finding that the Commissioner had failed to make a considered determination of the taxpayers' liability. The notice of deficiency in issue referred to a tax shelter which had no connection to the taxpayers or their return. The notice stated that, because their return was not available, the Commissioner was imposing the maximum rate to the adjustment amount. The Commissioner later attempted to substitute another tax shelter in place of the one named in the notice of deficiency, arguing that the taxpayers should have known that the IRS really meant the substituted tax shelter in the notice of deficiency. The Commissioner claimed that in spite of these errors on the notice of deficiency, the taxpayer had the burden to disprove the correctness of the Commissioner's revised determinations. The Tax Court agreed, and found that the taxpayers owed the revised tax deficiency assessment.

On appeal, the court stated that, "The notice must at a minimum indicate that the IRS has determined the amount of the deficiency." *Scar,* 814 F.2d at 1367. Agreeing that generally courts should not look behind a notice of deficiency, and relying upon the Commissioner's admission that the notice of deficiency referred to a tax shelter with no connection to the taxpayers, the court found that the Commissioner had failed to make a determination of a tax deficiency as required by § 6212(a) of the Code.[10] The court inter-

---

**10.** Section 6212(a) states, "If the Secretary determines that there is a deficiency in re- spect of any tax ... he is authorized to send notice of such deficiency to the taxpayer ..."

preted the statutory language of "determines" to connote "consideration, resolution, conclusion and judgment." *Scar,* 814 F.2d at 1368. The court concluded that the Commissioner must consider information that related to a particular taxpayer before it can be said that he had "determined" that a "deficiency" existed with respect to that taxpayer. The notice of deficiency was found to be arbitrary and void.

In *Portillo v. Commissioner,* 932 F.2d 1128 (5th Cir.1991), the Fifth Circuit reviewed a claim that a tax deficiency was arbitrary and erroneous and, citing *Scar v. Commissioner,* found that the IRS failed to substantiate its claim that the taxpayer received any unreported income. In *Portillo,* the taxpayer was a self-employed painter who received a Form 1099 from a contractor which showed significantly more in gross income than Portillo had reported receiving from him on his return. The taxpayer received the Form 1099 in mid 1985, after he had filed his 1984 return. Portillo's return was selected for audit due to the discrepancy between the Form 1099 and the reported income on the return. By the time of the audit in 1987, Portillo's ledger from 1984 had been stolen from his truck and the paint store from which he had purchased his supplies had lost a portion of Portillo's invoices. Based on the discrepancy, the IRS issued a notice of deficiency based solely on the Form 1099. The taxpayer appealed to the Tax Court, which found that the IRS's assessment must be accorded the presumption of correctness.

■ The Fifth Circuit reversed that portion of the Tax Court's decision. The court stated, "Although there is no prescribed form for a deficiency notice, the notice must at a minimum (1) advise the taxpayer that the IRS has determined that a deficiency exists for a particular year, and (2) specify the amount of the deficiency or provide the information necessary to compute the deficiency." *Portillo,* 932 F.2d at 1132 (*citing Donley v. Commissioner,* 791 F.2d 383 (5th Cir.1986)). The

court cited the reasoning in *Scar v. Commissioner* with approval, and stated, "By its very definition and etymology the word 'determine' irresistibly connotes consideration, resolution, conclusion and judgment." (Internal citations omitted). Because the IRS had an arguable basis for the tax deficiency and had investigated "somewhat" whether a deficiency existed, the court found that the notice of deficiency was not a "naked" assessment, *per se,* and found that the assessment was sufficiently substantive to have given the Tax Court jurisdiction.

The court then found that it need not give effect to the presumption of correctness if the Commissioner could not present some predicate evidence supporting its determination that there was unreported income. This applied whether the income was allegedly obtained legally or illegally. The court concluded that the notice of deficiency, based solely on the Form 1099, lacked any "ligaments of fact" and was arbitrary. The court stated:

> Therefore, before we will give the Commissioner the benefit of the presumption of correctness, he must engage in one final foray for truth in order to provide the court with some indicia that the taxpayer received unreported income. The Commissioner would merely need to attempt to substantiate the charge of unreported income by some other means, such as by showing the taxpayer's net worth, bank deposits, cash expenditures, or source and application of funds. ... [T]he Commissioner would not be able to choose to rely solely upon the naked assertion that the taxpayer received a certain amount of unreported income for the tax period in question.

*Portillo,* 932 F.2d at 1133–34 (Internal citations omitted).

■ The government argues that *Scar* and its progeny are inapposite because the focus in those cases was the jurisdictional requirements of the Tax Court. The government is correct that if the notice of deficiency is void, the Tax Court would not

have jurisdiction. The government's argument overlooks the fact that a notice of deficiency is not just a jurisdictional prerequisite to filing in Tax Court. The notice of deficiency is the final administrative determination of the tax deficiency for a tax return and applies to all deficiencies, whether they are paid and appealed to the U.S. District Court via a claim for refund, or not paid and appealed to Tax Court. Absent further action by the taxpayer, the notice of deficiency is final.

■ The United States places great emphasis on § 6404(a) of the Code, which authorizes the Secretary to abate a tax that is excessive.[11] The court does not read this section as reviving a notice of assessment which is arbitrary or erroneous. The court rejects any attempt to characterize the notice of deficiency as merely a ticket to Tax Court or an intermediate step in the process where an "estimate" of tax liability is appropriate. Simply because § 6404(a) authorizes the Commissioner to compromise or abate a tax deficiency upon a showing that it is excessive or illegal does not render meaningless § 6212(a)'s requirement that the Commissioner "determine" a tax deficiency in the first instance.

While the United States is correct that the adjustments to the partnership returns were final, all that means here is that the IRS determined the total amount of losses which would be disallowed *at the partnership level.* The present dispute concerns how those adjustments flowed through to affect the taxpayer's individual income tax returns. The IRS had one year within which to examine Weller's returns and make deficiency assessments based on what the taxpayer actually deducted on those returns. Therefore the tax deficiencies proposed for Weller's individual income tax were not final, even if the actual partnership adjustments were.

The government also misses the mark with its argument that the amounts of partnership adjustments were final, and "[a]rmed with the [final partnership adjustments] and his own tax returns, Weller could calculate the effect of the adjustments on his 1982, 1983 and 1985 tax liability."[12] The taxpayer was not required to self-assess at this stage of the proceeding and the fact that he could have gotten a ballpark tax deficiency figure himself does not relieve the IRS of the statutory requirement to timely determine and assess a tax deficiency.

In conclusion, it is undisputed that the Commissioner failed to make any determination of a deficiency amount for tax years 1983 and 1985 as required by § 6212(a) and instead, estimated the deficiency at $100,000 per year, for years 1983 to 1990.[13] It is undisputed that the Commissioner did not examine any returns of the taxpayer to determine if the taxpayer had taken a deduction based on Western Minerals partnership losses in any of those years. Significantly, this is a case where the IRS had in its possession all the information it needed to make a determination of a tax deficiency as required by the Code, yet failed to do so within limitations. Therefore the present facts can be distinguished from cases in which the illegal source of

11. Section 6404 **Abatements**
    (a) **General Rule.** The Secretary is authorized to abate the unpaid portion of the assessment of any tax or liability in respect thereof, which
    (1) is excessive in amount, or
    (2) is assessed after the expiration of the period of limitation properly applicable thereto, or
    (3) is erroneously or illegally assessed.

12. This begs the question that if the IRS claims that the taxpayer could have calculat-

ed his tax and penalties within limitations, why couldn't the IRS?

13. As it turned out, the tax deficiencies were $18,983 and $17,556, respectively, for tax years 1983 and 1985. The taxpayer did not utilize the partnership losses in other tax years. The fact that deficiency notices were sent for years 1983 through 1990 without reference to the tax returns undergirds the court's conclusion that the assessments were made without any basis in fact.

income, or the lack of taxpayer records, prevented the Commissioner from making an assessment with mathematical precision.

■ The subsequent computation of the taxpayer's adjusted tax liability after expiration of limitations does not revive the "naked" or void assessments. *Stallard v. United States*, 12 F.3d 489 (5th Cir.1994). In *Stallard,* the court held that an assessment of a § 6672 penalty [14] which referred to the wrong quarter, was void, and could not be corrected after the applicable limitations period for assessments had expired.

If the court were to condone this practice of "protective manual assessments," the limitations periods prescribed in the Code would have no meaning. The IRS could skirt any limitations period by making an estimate, (in its favor, of course) which simply buys time within which the IRS can actually perform its statutory duty of determining whether there is a tax deficiency. The government's fall back argument that the taxpayer owes the tax even if the tax was assessed late, overlooks the case law, cited earlier, that holds that assessment or payment of a time-barred tax liability is an "overpayment" subject to refund.

Finally, the court cannot agree with the government's argument that the notice of deficiency based on an estimate is a good thing because it commences the taxpayer's appeal rights before the Tax Court. It is hardly fair to send the taxpayer off to tilt at windmills in the Tax Court while the IRS is performing its statutory duty of determining a tax deficiency after limitations has run.

The court finds that the taxpayer has rebutted the presumption of correctness based on the notices' express language that they were based on an "estimate." The tax deficiencies were ones which could have been calculated with mathematical precision. The IRS's failure to determine the tax deficiencies as required by § 6212(a) was not attributable to any act or omission of the taxpayers. The August 20, 1992 assessments on the 1983 and 1985 tax years were made without any substantive basis, are arbitrary and erroneous, and are void. By the time the IRS correctly determined the tax deficiencies for 1983 and 1985, the limitations period for the assessments had run. The court finds that the payments on the 1983 and 1985 tax years are "overpayments" and must be refunded.

■ The 1982 year presents slightly different facts. As outlined above, the Commissioner based the 1982 notice of deficiency solely on the taxpayer's share of the Western Minerals partnership losses. The IRS did not review Weller's 1982 tax return before adding back the disallowed losses attributable to the partnership. If the IRS had, at a minimum, reviewed the tax return, it would have learned that the taxpayer had not taken the full amount of the loss on his return. The court finds that a determination of a tax liability without reference to the underlying tax return must be considered to be arbitrary and erroneous. When the Commissioner finally reviewed the tax return and made an adjustment to the August 20, 1992, notice of deficiency, it was too late; limitations had run. The court finds that the payments on the 1982 tax year are "overpayments" and must be refunded.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED, and the United States of America's Motion for Summary Judgment is DENIED. The court finds that the taxpayer is entitled to a refund on his 1982 1040X in the amount of $26,577.00, and on his Form 843 for tax year 1982 in the

14. Section 6672(a) of the Internal Revenue Code provides that when a person who is required to withhold and pay over trust fund taxes willfully fails to do so, he is liable for a penalty equal to the total amount of the unpaid taxes. The penalty is imposed on the "responsible person," that is, the person who 1) was responsible for either collecting, truthfully accounting for, or paying over such taxes, and 2) willfully failed to do so.

amount of $62,183.00. The taxpayer is entitled to a refund on his 1983 1040X in the amount of $18,983.00, and on his Form 843 for tax year 1983 in the amount of $16,443.00. The taxpayer is entitled to a refund on his 1985 1040X in the amount of $17,556.00 and on his Form 843 for tax year 1985 in the amount of $15,364.12.